IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORPORATION, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-25-00037 |
| COMMERCIAL INSURANCE ASSOCIATES, LLC, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff American Alternative Insurance Corporation ("AAIC") filed a First Amended Complaint ("FAC") against Defendants Sean P. Kirwan, Robin V. Russell, Commercial Insurance Associates, LLC ("CIA"), Donald Denbo, Scott Denbo, and William Denbo ("the Denbo Defendants" and, collectively with CIA, "Moving Defendants"), alleging seven claims. ECF 23. Moving Defendants have filed a partial motion to dismiss seeking partial dismissal of three claims: Count IV (negligent misrepresentation), Count V (fraud), and Count VII (negligent supervision). ECF 27. AAIC opposed the Motion, ECF 29, and Moving Defendants filed a Reply, ECF 30. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the Motion will be granted, and the challenged claims will be dismissed without prejudice.

I.    **FACTUAL BACKGROUND**

The facts below are derived from the FAC and taken in the light most favorable to AAIC, the non-moving party. AAIC is an insurance company that, in relevant part, issues surety bonds. ECF 23 ¶ 2. CIA, as an intermediary, helps contractors obtain surety bonds from AAIC and other bond-issuing companies. *Id.* ¶¶ 3–4. In May, 2022, AAIC entered into a "producer agreement"

1

with CIA that authorized CIA to issue surety bonds on behalf of AAIC, though AAIC's written approval was required before each bond could issue. *Id.* ¶¶ 8, 28, 37. CIA earned a commission for each bond issued. *Id.* ¶ 34. Defendants Kirwan and Russell worked for CIA in Maryland and were supervised, directly or indirectly, by the Denbo Defendants, who live and work in Tennessee. *Id.* ¶¶ 15–17, 19, 21, 22.

AAIC requires that all bond principals execute a General Agreement of Indemnity (or "GAI") before AAIC will execute a bond. *Id.* ¶ 38. The GAI provides that the bond principal and/or other signatories or entities will indemnify AAIC for any losses, costs, and expenses resulting from the issued bond. *Id.* ¶ 39. CIA and its employee, Kirwan, knew that CIA could not execute a bond on behalf of AAIC without a properly signed GAI and written approval for the issuance from AAIC. *Id.* ¶ 41. Two projects are at issue in this case:

**The Lyons Project**

In 2022, a Georgia-based contractor, Concierge Business Solutions, Inc. ("CBS") contacted CIA to obtain surety bonds for a construction project ("the Lyons Project") relating to a potential contract between CBS and the Department of Veterans Affairs ("VA"). *Id.* ¶¶ 42, 43. CBS provided CIA with financial and project-level information, which CIA forwarded to AAIC asking for permission to execute security bonds on behalf of AAIC to CBS relating to the Lyons Project. *Id.* ¶ 44. In connection with the request, CBS and two associated individuals executed a GAI in favor of AAIC. *Id.* ¶ 45. Nevertheless, after review, AAIC's surety underwriter did not approve the bond issuance, expressing concerns about the unqualified roofing subcontractor selected for the Lyons Project. *Id.* ¶¶ 46, 47. The underwriter told Kirwan in a December 2022 telephone call that CIA was not authorized to issue any surety bonds to CBS for the Lyons Project because the roofing subcontractor was on the verge of bankruptcy. *Id.* ¶ 47, 48. Kirwan thanked

2

the underwriter and stated that CIA would work with CBS to find a new roofing subcontractor. *Id.* ¶ 49. He also confirmed that CIA would not issue any surety bonds to CBS for the Lyons Project without AAIC's written approval. *Id.*

However, on or about December 1, 2022, Kirwan, "in his capacity as an employee, officer, manager and/or member of CIA" executed a performance bond and a payment bond in AAIC's name to CBS for the Lyons Project ("the Lyons Bonds"). *Id.* ¶ 54. "CIA and Kirwan" did not obtain AAIC's approval before issuing those bonds and did not inform AAIC of the issuance. *Id.* ¶¶ 55, 57.

AAIC learned of the bonds by January 2, 2024, when subcontractors and suppliers on the Lyons Project brought claims against the bonds because CBS or its subcontractors had failed to pay them. *Id.* ¶ 58. Since that time, CBS notified AAIC that it would not be able to complete the Lyons Project or pay its various contractors and suppliers for work performed and supplies provided for the project. *Id.* ¶ 61. On August 6, 2024, the VA declared CBS in default of its contract and also made a claim against AAIC under the performance bond. *Id.* ¶ 63. AAIC has already incurred losses exceeding $75,000 as surety for CBS, and additional claims under those bonds remain pending. *Id.* ¶ 64.

**The Martinsburg Project**

Kirwan also asked AAIC to provide CBS with surety bonds for a construction project for the VA in Martinsburg, West Virginia ("the Martinsburg Project"). *Id.* ¶ 66. Again, CBS provided information about the project to CIA, who forwarded the information to AAIC with a request for permission to execute the bonds. *Id.* ¶ 67. AAIC responded that in addition to a GAI from CBS, it would require a GAI from JFDB, LTD d/b/a Feldkamp Design Build ("Feldkamp") and its

3

principals. *Id.* ¶ 69. Feldkamp was serving as a "super subcontractor" on the Martinsburg Project. *Id.*

AAIC's underwriter told Kirwan about the requirement for indemnification by Feldkamp during a telephone call in March, 2023. *Id.* ¶ 70. Kirwan stated that he understood. *Id.* ¶ 71. On or about April 21, 2023, Kirwan emailed to AAIC a document purportedly executed by Feldkamp and its principals, agreeing to be bound as additional indemnitors to the CBS GAI for the Martinsburg Project ("the Feldkamp GAI Amendment"). *Id.* ¶¶ 75, 76. The signatures of the Feldkamp indemnitors were notarized by Russell, a Bond Client Manager at CIA working under Kirwan's supervision. *Id.* ¶¶ 77, 78. The notary acknowledgments state that the Feldkamp Indemnitors personally signed the documents in Russell's presence. *Id.* ¶ 78. In reliance on those representations, AAIC authorized the issuance of surety bonds to CBS for the Martinsburg Project ("the Martinsburg Bonds"). *Id.* ¶ 80. Kirwan, "in his capacity as an employee, officer, manager, and/or member of CIA," executed the Martinsburg Bonds for AAIC on or about May 9, 2023. *Id.* ¶ 83.

By July, 2024, CBS notified AAIC that it would be unable to complete the Martinsburg Project and could not pay its subcontractors and suppliers. *Id.* ¶ 84. Numerous claims and lawsuits have since been made under the Martinsburg Bonds, including a claim by the VA, as it declared CBS in default on July 22, 2024. *Id.* ¶¶ 85, 86.

AAIC contacted the Feldkamp Indemnitors to advise them of their indemnity obligations. *Id.* ¶ 87. But the Feldkamp Indemnitors responded by asserting that they had not signed the Feldkamp GAI Amendment and that they had been in Ohio on the date the amendment was purportedly notarized in Maryland. *Id.* ¶ 88. AAIC contacted CIA, which advised that Russell had not notarized the document in the presence of the Feldkamp Indemnitors. *Id.* ¶¶ 89, 91.

To date, AAIC has incurred losses exceeding $1 million as a result of the Martinsburg Bonds. *Id.* at 99. Losses are continuing to accrue. *Id.*

## II.     LEGAL STANDARD

Moving Defendants seek dismissal of three of AAIC's counts as they are asserted against particular defendants. ECF 27. Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III.   ANALYSIS

#### A. Count IV and Count V (Negligent Misrepresentation and Fraud against CIA and Kirwan)

Moving Defendants ask that AAIC's negligent misrepresentation and fraud claims against CIA be dismissed because the FAC does not allege (and certainly not with particularity) that CIA

6

itself engaged in improper conduct. ECF 27. In response, AAIC contends that CIA is "liable for Kirwan's bad acts under the doctrine of *respondeat superior*." ECF 29 at 9.

AAIC correctly contends that an employer can be liable under that doctrine when an employee commits tortious conduct when acting within the scope of his employment. But the FAC fails to allege sufficient facts to plausibly plead that doctrine. It does not even specify Kirwan's job title or the nature of his role at CIA, it does not allege Kirwan's motivations for engaging in the alleged tortious conduct (*i.e.* whether he was motivated by personal gain or was acting in the interests of CIA), and it does not mention "*respondeat superior*" or "scope of employment" at all. Instead, it engages in an unclear form of group pleading by repeatedly alleging that "CIA and Kirwan" took actions instead of clarifying that its theory is that Kirwan took actions within the scope of his employment at CIA. AAIC's pleading style intimates (or at least leaves open the possibility of) conduct by another person in addition to Kirwan, which would not have been pleaded with particularity. While it seems likely to this Court that AAIC will be able to plead its claims against CIA under a *respondeat superior* theory, because it has not done so in the FAC, those claims will be dismissed without prejudice and AAIC will be afforded an opportunity to file another amended complaint to address the issue.

### C. COUNT VII (Negligent Supervision against CIA and the Denbo Defendants)

Count VII is a negligent supervision claim against CIA and the three Denbo Defendants. Moving Defendants seek to dismiss this count only as to the Denbo Defendants.

There are no allegations, anywhere in the Amended Complaint, regarding specific actions taken by any of the Denbo Defendants. Instead, the Amended Complaint simply alleges that each of the Denbo Defendants was a supervising executive at CIA and that Kirwan and Russell "both reported, directly or indirectly" to them. ECF 23 ¶¶ 15–17, 156. The Amended Complaint then

alleges in a conclusory manner, without proffering any facts in support, that the three Denbo Defendants "knew or should have known of Kirwan and Russell's improper conduct in connection with the issuance of the Lyons Bonds, the Martinsburg Bonds, and the execution of the Feldkamp GAI Amendment." *Id.* ¶ 160.

First, this Court agrees that the Amended Complaint has not established this Court's personal jurisdiction over any of the Denbo Defendants, who live and work in Tennessee. *See id.* ¶¶ 15–17. Don Denbo is "the Designated Responsible Licensed Producer for CIA as registered with the State of Maryland" and Don and Will Denbo "are both designated by the State of Maryland as CIA Business Entity Affiliations." *Id.* ¶ 14. But the holding of such designations alone (relatively common to high-ranking officials in a company) does not establish purposeful availment, absent some connection between those designations and Kirwan and Russell's conduct or any actual business activity conducted by the Denbo Defendants in Maryland. *See Harte-Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 513–14 (D. Md. 2004) (clarifying that personal jurisdiction is determined by a defendant's "personal contacts with the state of Maryland, not his status as an officer, director, employee, [or] owner of [a] defendant corporation[]."). Plaintiff's conclusory allegations regarding the "direct or indirect supervision" of Kirwan and Russell appear premised entirely on the fact that the Denbo Defendants rank more highly than those employees on the organizational chart. Such status cannot suffice to establish purposeful availment by corporate executives who work in a different state.

Second, even had personal jurisdiction been established, AAIC has failed to plead a plausible claim of negligent supervision because it has not established that the Denbo Defendants were the "employer" of Kirwan or Russell. Both Maryland and Delaware law require an employment relationship to state a negligent supervision claim. *See Wood v. Walton*, 855 F. Supp.

2d 494, 505 (D. Md. 2012) (requiring a plaintiff to allege, in relevant part, that the employer knew or should have known that the employee was capable of inflicting harm of some sort); *Fanean v. Rite Aid Corp. of Delaware, Inc.*, 984 A.2d 812, 825–26 (Del. Super. Ct. 2009) ("The deciding factor is whether the employer had or should have had knowledge of the necessity to exercise control over its employee."). AAIC has not alleged facts suggesting that the Denbo Defendants themselves employed Kirwan or Russell. Accordingly, the claims against them in Count VII must be dismissed.

IV.   **CONCLUSION**

For the reasons set forth above, Moving Defendants' partial Motion to Dismiss, ECF 27, will be GRANTED. Counts IV and V (as against CIA) and VII (as against the Denbo Defendants) will be dismissed without prejudice. Should AAIC seek to amend only its fraud and negligent misrepresentation claims against CIA to state a *respondeat superior* theory, it may file an amended complaint within fourteen days of the date of this order without filing a separate motion for leave to amend. For any other potential amendments, AAIC must seek leave to amend its claims within fourteen days of this Memorandum Opinion and Order. A separate Order follows.

Dated:  October 10, 2025　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　　　Stephanie A. Gallagher
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge